## SCHMITT *v.* REED *et al.*

*(Superior Court of New York City, General Term.* May 5, 1890.)

**VENDOR AND VENDEE—DEFECTIVE TITLE—INCUMBRANCES.**

> A land contract stated that a mortgage on the property, assumed by the purchaser, had five years to run when in fact it had only three. Three days before the day set for completion of the purchase the error was discovered, and the purchaser's attorney notified the vendor that he would insist on the production of an extension of the mortgage, and refused to extend the time of closing. *Held,* that the vendee was justified in refusing to complete the purchase after the time specified in the contract, and was entitled to recover from the vendor money expended about the purchase.

Appeal from special term.

Action by Oscar Schmitt against Charles H. Reed and Elizabeth Schmohl. There was judgment for plaintiff, and defendants appeal. The following is a copy of the opinion of the judge at special term:

"O'GORMAN, J. On the 18th day of October, 1888, the plaintiff and the defendants entered into a written agreement for the sale by the defendants to the plaintiff of certain premises in this city, for the price and sum of $34,500, to be paid partly in cash, and partly by the plaintiff 'taking the premises subject to a mortgage for $22,500, then a lien on said premises, bearing interest at 5%, and having five years to run from November 1, 1886.' This agreement also provided that the 'deed should be delivered on the 15th day of November, 1888, at 2 o'clock P. M., at the office of the attorney for the plaintiff, No. 215 Bowery, in the city of New York.' This agreement was executed by the defendants, the vendors, and by the plaintiff. An abstract of title was delivered by the defendants' attorney to the attorney for the plaintiff, on which abstract, however, the date of the maturity of the mortgage did not appear. On November 12, 1888, plaintiff's attorney discovered that the mortgage had only three years to run from November 1, 1886, instead of five years, as stated in the contract; that is to say, that payment thereof was due on November 1, 1889, instead of 1891. On the same day he gave notice thereof to the defendants, and also gave notice that he would insist on the production of an extension of the mortgage to the period mentioned in the agreement, on the day of closing the contract fixed therein. On November 13th, the attorney for the defendants visited the attorney for the mortgagee, with a view to obtain an extension of the time for payment thereof. He then learned that the mortgagee resided in Philadelphia, was then absent from his home, and could not be speedily communicated with. Of these facts the attorney for the plaintiff was, on the same day, made aware, and he again insisted that the extension of the mortgage should be ready for delivery on November 15th, the day for closing the transaction specified in the contract. On the next day, November 14th, the defendants and their attorney offered to give ample security that the plaintiff would not be called on to pay the mortgage until the time mentioned in the agreement of sale, and asked for extension of the time of closing, which request was refused by plaintiff's attorney. There is some question whether the attorney of the defendants did not express doubt as to the possibility of his obtaining an extension of time for payment of the mortgage from the mortgagee. On November 15th, the plaintiff and his attorney appeared at the place specified in the contract, and tendered the money called for by the contract. The defendants stated that they had not yet obtained an extension of the mortgage; that they expected to procure it; and tendered a deed of the premises, containing a provision providing for the assumption of the mortgage maturing November 1, 1889, and a covenant on the part of the defendants that they would procure an extension or hold plaintiff harmless, in case the payment of the mortgage was called for pursuant to its terms. The plaintiff refused this deed, and demanded return of his money, and refused to extend the time for performance of the contract.

On November 23d, a deed executed by the mortgagee, extending the time for payment to November 1, 1891, was by the defendants' attorney tendered to the plaintiff, which he refused, and on the same day this action was commenced by service of the summons and complaint on one of defendants. These are the material facts in the case.

"The plaintiff now brings this action to recover the money expended by him on account of the purchase of the premises, and also for examination of title, surveys, etc. The defendants answer, and pray, as a counter-claim and as equitable relief, that the plaintiff be decreed to specifically perform the contract. The defendants rely in their defense chiefly on the allegation that they were not guilty of any fraud or misrepresentation, as to the date on which payment of the mortgage became due, and that they did not in terms assert that it became due on the day mentioned in the contract; and they also aver that, on being informed that the mortgage in fact was payable in 1889, two years before the date set forth in the agreement, they used reasonable diligence in procuring a deed from the mortgagee extending the time of payment, and that they did actually procure such deed, and tendered it to the plaintiff on November 23d, eight days after the date specified in the agreement of sale for closing the contract. The evidence does not, in my opinion, sustain a charge of laches on the part of the plaintiff, or of any delay in acquainting himself as to the contents of the mortgage in question. He was justified in assuming for the time that the defendants, in executing their contract, did not err in the statement made therein as to the time of the maturity of a mortgage on their own property. On ascertaining the error, the attorney for the plaintiff lost no time in informing the attorney for the defendants of the condition of affairs.

"Neither am I satisfied that a charge of laches can well be sustained against the defendants for delay in securing the extension of time from the mortgagee, for payment of the mortgage, after they had received such information. The main question seems to be whether the plaintiff, having given notice to the defendants that he would require formal, exact, and final execution of the contract, and the production of the deed extending the time for payment of the mortgage to the date set forth in the contract, and that he would accept of no substitute for that deed, and also that he would require the transaction to be closed on the day mentioned in the contract, and would not consent or submit to any further delay, was justified, in law and equity, in taking that position. If so, the plaintiff must succeed in this action. If, on the other hand, a court of equity, on the facts of this case, has power, and, in the exercise of its discretion, ought, to relieve the defendants, then the question will be whether they have shown themselves to be deserving of equitable relief, and whether it would be in accordance with public policy to grant it. There are no authoritative decisions of the courts of this state laying down a hard and fast rule of law for cases of this nature. Each case must, in great degree, be decided according to its own peculiar features, and on its own facts. The time for closing contracts for the sale of land, when clearly and distinctly expressed in the contract itself, although not expressly stated as being of the essence of the contract, cannot be treated as mere surplusage, without any force or intent or meaning. It can, in my opinion, be made essential to the contract, by the distinct demand of either party that the express terms of the contract in that respect be carried out. The plaintiff had the right to demand that the contract should, in that and in all other respects, be carried out according to its terms, and, on such demand being made, it becomes of the essence of the contract. If the defendants were in doubt, before or at the time when the contract was executed, as to the time when the mortgage fell due, it was their duty to make speedy inquiry on the subject, so as to correct their error, if any, in time. In failing to do so, and leaving a question of such manifest importance in doubt, up to a few days before the time fixed for clos-

ing the transaction, I think the defendants failed in their duty, and in the vigilance which should be required of them, even if it were only for their own protection.

"In the various transactions which take place in this city as to the sale and transfer of real estate, cases of this nature frequently arise; and it is important that the law on these subjects should be, as far as possible, clear, uniform, and capable of practical application. To hold that no importance should be attached to the time specifically fixed in the contract of sale for the closing of the transaction, by exchange of deeds, etc., would be, in my opinion, dangerous, and tending to the growth of habits of looseness and uncertainty. In the transaction of such business, mutual courtesy is often needed, and often freely given. But such courtesy may be withheld without violation of law, and the injurious consequences that may ensue do not constitute a cause of action at law, or sustain a claim for equitable relief. Applying the rules of law and equity to the special facts in the case at bar, I hold that the defendants are chiefly responsible for the delay in closing the contract at the time specified therein; that the plaintiff had a right to demand a deed from the mortgagee extending the time for the payment of the principal of the mortgage to the date mentioned in the contract; that the defendants were primarily responsible for the correctness of the date set forth in the contract; that, under all the circumstances, the plaintiff had the lawful right to require the closing of the sale at the time specified in the contract, and was under no legal obligation to extend the time. In the case at bar, the plaintiff distinctly refused to agree to any further extension, and announced that he would rest on his strict rights under the contract. That the defendants were unable to carry out their part of the contract on the day required by the contract was their misfortune, and, to some extent, their fault. They ought to have had more accurate knowledge of the material condition of their own title, and they ought not to have made themselves responsible by contract for the accuracy of a statement of facts in the contract which would naturally be an important element, inducing the plaintiff to purchase. Judgment should be for the plaintiff, and against the defendants, denying the equitable relief claimed by them. The plaintiff should have his costs in the action."

Argued before SEDGWICK, C. J., and FREEDMAN, J.

*William C. Reddy,* for appellants. *Henry C. Botty,* for respondent.

PER CURIAM. The judgment should be affirmed, with costs, upon the opinion filed by the learned judge at special term.

---

## STEVENS *v.* NEW YORK EL. R. CO. *et al.*

(*Superior Court of New York City, General Term.* May 5, 1890.)

1. COSTS—REASONABLE AND NECESSARY DISBURSEMENTS—STENOGRAPHER'S FEES.
   The fees of the stenographer for a copy of his minutes are taxable as a reasonable and necessary disbursement on appeal, on proof that the copy was necessary to enable respondent to propose amendments to the proposed case. Distinguishing *Apparatus Co.* v. *Sargent,* 43 Hun, 154.

2. SAME—RETAXATION—WAIVER—APPEAL.
   An appeal from a judgment is a waiver of the right to move for a retaxation of costs.

Appeal from special term.

Action by Byam K. Stevens against the New York Elevated Railroad Company and another. Defendants' motion for a retaxation of costs, where the clerk taxed the cost of the stenographer's minutes used by the plaintiff in preparing amendments to the proposed case on appeal, was denied. The defendants' affidavits showed that the copy of the minutes had been procured after the trial, and before the decision of the court at the trial term. Defendants appeal. For former report, see 8 N. Y. Supp. 313.