(8 Misc. Rep. 126.)

## ZORN v. McPARLAND.

(Superior Court of New York City, Special Term. April 13, 1894.)

1. VENDOR AND PURCHASER—DOUBTFUL TITLE—RECOVERY OF MONEY PAID.
    A purchaser may recover money paid in anticipation of performance by the vendor where the title is doubtful.

2. SAME—RECORD TITLE.
    A purchaser may refuse to take title, and may recover money paid by him, where there is of record an unsatisfied mortgage on the premises, though the mortgage has been paid, and a satisfaction piece executed by the mortgagee, as the purchaser is entitled to a clear record title.

3. SAME—RULES OF LAW.
    An action by a purchaser to recover money paid by him, on the ground that the vendor's title was not good, is governed by the strict rules of law, where equitable relief is demanded neither in the complaint nor in the answer.

Action by John Zorn against Peter McParland to recover money paid on a contract to purchase real estate. Judgment for plaintiff.

E. F. Hassey, for plaintiff.

R. H. Arnold, for defendant.

McADAM, J. This is an action at law by the plaintiff, the vendee in a contract for the purchase of real estate, against the vendor therein, to recover $750, a deposit made by the plaintiff at the time of the execution of the contract, and also the sum of $278, paid by him for examining the title, which was rejected by the vendee's lawyer on the ground of the existence of certain incumbrances affecting the title, which, it is alleged, disabled plaintiff from carrying out the sale. The contract was to have been closed on May 10, 1892; but the time was extended, for the accommodation of the plaintiff, to May 26, 1892, at the office of the vendor's attorney; and the vendee notified the vendor that he would then insist upon strict performance of the contract by the vendor. On the adjourned day the parties met, and it appeared that there were outstanding, of record, nine certain blanket mortgages, covering the lot in question, with four others. There was also unsatisfied of record a mortgage to one William Gault (described on the record as "Ganed") for $3,100. It appears by the evidence that the holders of the nine blanket mortgages were either present, or were represented, at the office of the vendor's attorney, with releases of the lot, ready to deliver such releases upon receiving the proportionate amount of their several mortgages; that the Gault or Ganed mortgage had been paid, and a satisfaction piece executed and delivered, together with the bond and mortgage. So that the Gault mortgage, as a subsisting obligation, had ceased to exist, though it was unsatisfied of record. The reason why it was not satisfied, as explained on the trial, was that by a clerical error the copyist in the register's office inserted in the record of the mortgage the name "Ganed," instead of "Gault," as the mortgagee. The error was not a fatal one, for it appeared on the face of the original mortgage itself, as well as upon the index book in the register's office, in which the mortgage, at the time it

was left for record, was entered, yet it was sufficient to prevent the cancellation of the record in ordinary course. Mr. Arnold, the vendor's attorney, offered to go over to the register's office, and have the error corrected, and the mortgage canceled of record. This would have caused delay, for the register had already refused to cancel the record, except on a satisfaction piece executed by "Ganed," the mortgagee of record. The register, after satisfying himself that the error occurred in his office, discharged the mortgage of record some days afterwards. It was of record, however, on the day appointed for closing the title, and its presence there constituted one of the reasons why the title was rejected.

The vendee's attorney raised another objection, in respect to which the vendor declined to do anything. The vendee insisted that a lis pendens filed in an action of one Hamilton against McNiece (a former owner of the property) constituted a fatal objection to the title offered. That was an action to impress in favor of Hamilton, as against McNiece, a trust in the lot in question and other property. Mr. Arnold explained that this objection was without force, for the reason that McNiece had conveyed the property to the defendant before the lis pendens in the Hamilton suit had been filed; that defendant was not chargeable with notice of that action, was not a party thereto; and that if the searches interposed by the vendee had been put in, in the usual form, the lis pendens would not have been returned upon it, for it would not have appeared in the chain of title. The court of appeals, in Hayes v. Nourse, 114 N. Y., at page 604, 22 N. E. 40, holds that a lis pendens is not an incumbrance on property, nor does it furnish any reason why a purchaser should not complete his purchase. The court, in that case, aptly said, "All that the registration of a lis pendens does is to require persons to look into the claims of the plaintiff who registers it." See, also, Aldrich v. Bailey, 132 N. Y. 85, 30 N. E. 264; Simpson v. Del Hoyo, 94 N. Y. 193; Valentine v. Lunt, 115 N. Y. 503, 22 N. E. 209; Jacobs v. Morrison, 136 N. Y. 101, 32 N. E. 552. Upon looking into the claims of Hamilton, the person who filed the lis pendens against McNiece, it would have appeared that no matter what equity she had, as against McNiece, it could not attach to the property in the hands of the defendant, who took without knowledge or notice, and prior to the filing, of the lis pendens. As against the defendant, it was not operative for any purpose, nor would it have been against the plaintiff, if he had taken title.

With the Hamilton lis pendens out of the way, there remains the question whether the vendor was able, at the time appointed for closing the title, to carry out literally the terms of his contract. In Morange v. Morris, 42 N. Y. 48, 3 Abb. Dec. 314, 32 How. Pr. 178, the court held that if, at the time appointed for closing a title, the premises are incumbered by taxes and assessments, the vendor is not in a position to convey, and the vendee, owing to such inability, has a right to recover his deposit, without any tender whatever upon his part. This case, explained in Bigler v. Morgan, 77 N. Y. 312, and Rinaldo v. Hausmann, 52 How. Pr. 190, has never been reversed,

and must be recognized as an authority on the subject in controversy. In Oppenheimer v. Humphreys (Sup.) 9 N. Y. Supp. 840, affirmed 125 N. Y. 733, 26 N. E. 757, the court held:

"It is well settled that, unless a seller of land tenders a title which is free from reasonable doubt, the purchaser is not bound to complete. In the case at bar the records show a mortgage of $22,000, with interest at seven per cent. The claim was made upon the part of the defendants that $6,000 had been paid upon this mortgage, and interest reduced to five per cent. They offered the certificate of Riggs & Co., bankers in this city, who were alleged to be the agents of the mortgagee, who had possession of the bond and mortgage, and also of the satisfaction piece thereof, to the effect that such payment had been made, and such reduction of interest had occurred. We do not think that the plaintiff was bound to accept the title upon evidence of this character,—that the apparent incumbrance upon the property had been partially removed. He was not bound to run the risk of being able at some future time to establish that Riggs & Co. were the agents of the mortgagee, or, if the bond in question should happen to have been destroyed, to rest his claim of payment upon parol evidence, the benefit of which he might at any time lose. He was entitled to a clear record title. He had the right to claim that his title should be put beyond the contingency of human life, or the continued existence of papers which could not be the subject-matter of a record. He was entitled to demand, if the mortgage had been reduced to the extent claimed, such evidence of the fact as would enable him to spread the same upon the record, so that, no matter who might die, or what might become of the original bond in question, the records would show precisely the extent to which the mortgage was a lien; and it does not seem that anything less than this would satisfy the requirements of the law."

It has been held that, in an action by a vendee to recover damages for the breach of a contract to convey, the plaintiff must satisfy the court that the title offered by the vendor was absolutely bad, and that it is not sufficient to show that it was doubtful. Ingalls v. Hahn, 47 Hun, 104; Bayliss v. Stimson, 53 N. Y. Super. Ct. 225. But this doctrine has since been repudiated, and it is now the law that the vendee may recover moneys paid in anticipation of performance, where the title of the vendor was doubtful, and not marketable. Moore v. Williams, 115 N. Y. 586, 22 N. E. 233. In this respect the equitable rule in regard to specific performance has been made applicable to actions at law. In equity, time is not regarded as of the essence of the contract. But at law the rule is different, time being always regarded as an essential element. Oppenheimer v. Humphreys, supra; Schmitt v. Reed (Super. Ct. N. Y.) 9 N. Y. Supp. 705, affirmed 132 N. Y. 108, 30 N. E. 373. So that the vendee had a right to insist that the contract be closed on the day finally fixed for closing the same, particularly in view of the fact that he had notified the vendor that he would insist upon strict performance at that time.

Even assuming that the unpaid taxes might have been deducted from the purchase money (Marsh v. Wyckoff, 10 Bosw. 202), and the releases from the blanket mortgages obtained, there still remains the undisputed fact that there was unsatisfied of record the $3,100 mortgage to Gault or Ganed. True, it had been paid, and a satisfaction piece executed by Gault. But this was not sufficient for the purposes of the vendee. He was entitled to a clean record title, and it was the duty of the vendor to have had this mortgage satis-

fied of record prior to the time finally appointed for closing the sale. This is especially so in view of the fact that the register had refused to discharge the mortgage of record on the existing satisfaction piece, on the ground that the record showed that the mortgage was made to Ganed, and not to Gault, the party who executed the certificate for its discharge. The register having refused to cancel the mortgage, there was no reason why the vendee should assume that any application by him for a like purpose would have met with a different result. Nor was the vendee bound to assume the trouble and risk of inducing or compelling the register, by proceedings at law, to discharge the mortgage of record. This was a duty the law cast upon the vendor, and he could not impose it upon the vendee. If the record of the mortgage and the satisfaction piece had conformed, a different question might have been presented. But the vendee had the right to assume that the record was correct, and, as between him and the vendor, the latter was responsible for its accuracy. The rule is that purchase money paid in advance by a vendee may, after demand, be recovered from the vendor on proof of his inability to perform, even though the vendee could not have performed. Bigler v. Morgan, 77 N. Y. 312. And see Karker v. Haverly, 50 Barb. 79. But if the vendee goes further, and seeks to recover damages for breach of the contract, he must prove sufficient tender on his part. Bigler v. Morgan, supra. The existence of record of this mortgage, and that alone, was sufficient, under the authorities cited, for the purposes of this action, to justify the vendee in refusing to take title; and, having tendered full performance on his part, he is entitled to recover the deposit made, with $278, the reasonable fees for examining title. Bigler v. Morgan, supra; Moore v. Appleby, 108 N. Y. 237, 15 N. E. 377. The fact that the vendee insisted strenuously upon the Hamilton objection does not amount to a waiver of the one urged against the "Gault" or "Ganed" mortgage. If, by his persistence in the Hamilton objection, he had prevented the vendor from satisfying the Gault mortgage, he might have been held to have waived his objection respecting that. But it nowhere appears, nor can it be inferred, that if the objection to the Hamilton lis pendens had not been raised the vendor could have gone to the register's office, and at once secured the satisfaction of the Gault or Ganed mortgage. It was not in, but out of, the ordinary course, particularly when the matter had once been passed upon unfavorably by the register; and, even if a favorable result could have been obtained by waiting, plaintiff was under no obligation to do that. In Oppenheimer v. Humphreys, supra, and Hewison v. Hoffman (Com. Pl. N. Y.) 4 N. Y. Supp. 621, the vendor asked for delay to cure certain defects, which delay the vendee refused to grant, and the court held he was under no obligation to grant the time desired. The rules enforced are those pertaining strictly to actions at law; for in equity, where the condition of the parties remains unchanged, specific performance may in some cases be ordered, if the title is made good at the time of trial. Mott v. Ackerman, 92 N. Y., cases cited at page 545. And

deductions from the consideration money may by decree of the court be made for almost any purpose necessary to carry the contract into effect. But the parties are not invoking the aid of equity, and stand on their strict legal rights, and plaintiff is entitled to have them enforced to the letter. Equitable relief is neither demanded by the complaint of the plaintiff nor the answer of the defendant, so that both parties are concluded by the form of the action. Defendant has cited certain authorities in support of his contention; but they will be found on examination to be equity suits, and not actions at law, and for that reason inapplicable. It follows that there must be judgment for plaintiff for $1,028, with interest, aggregating $1,153, and costs.